UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| MICHAEL LEROY CAMPBELL, ) | Civil Action No.: 4:08-1765-HFF-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| LARRY W. POWERS, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**I.     INTRODUCTION**

Plaintiff, who is proceeding pro se, was at all times relevant to the incidents set forth in his Complaint, housed at the Spartanburg County Detention Facility. Plaintiff raises a claim under 42 U.S.C. § 1983, complaining of the conditions of his confinement.

Presently before the Court is Defendant's Motion for Summary Judgment (Document # 24). Because he is proceeding pro se, Plaintiff was warned pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Motion for Summary Judgment could result in the dismissal of his claims. Plaintiff filed an Affidavit in response to the Motion for Summary Judgment.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because this motion are potentially dispositive of Plaintiff's claims, this Report and Recommendation is entered for review by the district judge.

## II. FACTS

Plaintiff sets forth the following factual allegations in his Complaint:

> Overcrowding–I'm currently detained in Pod 3 Cell 35. Within the confines of this 8 x 12 cell four adult males are housed. There's a triple bunk with one inmate on the floor. There's not enough room provided for each inmate. Because of the limited space tempers flare often. And when one of us have to deficate (sic) the smell is overwhelming and the other inmates inhale these gases from the defication. The reason for this is that the main intake and exhaust vents in Pod 3 are covered in dust and debris and when the air reaches our rooms the air is dusty and sometimes put off a foul smell, the exhaust vents in the rooms do not pull out air because they're stopped up.
>
> Around January 08 I started noticing bumps on my arms, legs, chest, and back. The bumps became tender and sore. I put in requests for several weeks between 6 - 10 requests. Finally I went to the officer on duty, Officer Harwick. He called medical. I was sent to medical. The nurse observed the individual isolated bumps and told me that I had a staph infection. I asked her how I received it. She in return stated that staph was in the Pods.
>
> Because there are 4 men to a cell the staff puts smokers in with nonsmokers. I myself and the inmates listed as plaintiffs do not smoke. But we're having to breathe second hand smoke on a continuous basis because we're housed in a cell with inmates that smoke. While we're confined behind locked doors with improper ventilation our cell mates will smoke. We've put in several requests to be housed in a cell with other nonsmokers. None of the requests were answered or honored. As a result of us having to indure second hand smoke on a continuous basis I obtain a chronic cough, tightness in my chest, whezzing when I breathe. I've asked several times from medical help but all my requests have gone unanswered.

Complaint at 3-4.

The Spartanburg County Detention Facility (SCDF) is a pretrial detainment facility. Powers Aff. at ¶ 3. Defendant Larry Powers is the Director of the SCDF. Id. at ¶ 2. Powers acknowledges that the SCDF exceeds capacity at times. Id. at ¶ 5. When this is the case, he notifies the appropriate county officials of the need for additional housing space. Id. Because of the large amount of inmates the SCDF houses, those inmates in the general population (e.g. Pod 3) are celled in multiples. Id. Because of the nature of the SCDF as a pretrial detainment center, this situation is usually temporary.

-2-

Id. In addition, inmates housed in the general population are given the most freedom and extensive access (approximately 6 to 7 hours per day) to the day room. Id.

Powers also quarterly, or more often if needed in response to a complaint, has the SCDF tested for staph and other infectious diseases. Id. at ¶ 6. AAA Environmental also collects air samples for humidity, air quality, and nicotine levels; evaluates temperature and air flow; and tests exhaust equipment as needed. Id.

At the SCDF main facility, smoking is prohibited in common areas and in individual cells. Id. at ¶ 7. Inmates and staff can smoke in designated outside common areas of the institution. Id. On May 5, 2008, AAA Environmental tested Plaintiff's housing area (Pod 3) for nicotine as an indicator of the levels of tobacco smoke. Id. at ¶ 8. No nicotine was detected in the vicinity of Plaintiff's cell or common housing area. Id. and Ex. B to Powers Aff.

An indoor air evaluation was performed at the SCDF on May 13, 2008. Id. at ¶ 9. AAA Environmental concluded the facility where Plaintiff is housed falls within all of the suggested guidelines for Carbon Dioxide and air quality. Id. and Ex. C to Powers Aff.

Powers avers that he has never received a grievance from Plaintiff regarding the conditions of confinement or second hand smoke at the SCDF. Id. at ¶ 10.

Powers also avers that he has taken specific measures to protect against staph infections. Id. at ¶ 11. AAA Environmental tests the SCDF as a proactive initiative to determine whether staph is present. Id. On November 26 and 30, 2007, AAA Environmental tested the SCDF for staph and no staph was detected on any of the collected samples. Id. at ¶ 12. Testing was again performed at the SCDF on March 13, 2008, with the same results. Id. The most recent testing was performed on August 21, 2008, with the same result. Id. and Ex. E to Powers Aff. Furthermore, Powers avers that

all cleaning supplies purchased and used in the SCDF are EPA approved to clean and sanitize surfaces from bacteria, including staph. Id. at ¶ 11 and Ex. D to Powers Aff.

Judy D. Collins is a Registered Nurse and Nursing Supervisor at the SCDF. Collins Aff. at ¶ 1. Collins avers that Plaintiff has never been diagnosed with a staph infection. Id. at ¶ 4. However, Plaintiff avers that Collins told him he had a staph infection and that staph was bad at SCDF. Plaintiff Aff. at ¶ 2. On February 2, 2008, March 6, 2008, April 7, 2008, and May 17, 2008, Plaintiff complained to the medical staff about a lump, bump, or knot on various parts of his body. Collins Aff. at ¶¶ 5-8. Each time he was prescribed Bactrim DS, an antibiotic that treats a variety of bacterial infections. Id. Plaintiff avers that he has numerous permanent scars on his body resulting from the bacterial infection. Plaintiff Aff. at ¶ 1.

On May 6, 2008, Plaintiff complained of a runny nose and stated that his cell mates were smoking in the cell when the doors were locked. Collins Aff. at ¶ 9.

## III. STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come

forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." See also Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials of his pleadings. Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322. See also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV. DISCUSSION

### A. 42 U.S.C. § 1983

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). To be successful on a claim under § 1983, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

### B. Legal Analysis Applicable to Pretrial Detainees

The SCDF is a pre-trial detainment facility. Powers Aff. at ¶ 3. Plaintiff was detained at the facility to await the disposition of pending charges. Id. Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th Cir.1987). The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions ... the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the

Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished. An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime. Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials. If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld. Bell, 441 U.S. at 538.

### C. Conditions of Confinement

Confinement conditions of pretrial detainees are to be evaluated under the due process clause rather than the Eighth Amendment prohibition against cruel and unusual punishment. Bell, 441 U.S. at 535 n. 16. To prevail on a conditions of confinement claim, a pretrial detainee must show either (1) an expressed intent to punish, or (2) lack of a reasonable relationship to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred. Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir.1992) (citing Martin v. Gentile, 849 F.2d 863, 870 (4th Cir.1988)). Prison officials act with the requisite culpable intent when they act with deliberate indifference to the inmates' suffering. Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir.) (citing Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)), as amended, 75 F.3d 448 (9th Cir.), cert. denied, 516 U.S. 916, 116 S.Ct. 306, 133 L.Ed.2d 210 (1995). The test for whether a prison official acts with deliberate indifference is a subjective one: the official must "know of and disregard an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference

could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. However, due process also requires the State to provide pretrial detainees with some minimal level of food, living space, and medical care, and "the failure to provide that level of necessities violates due process-even though the conditions imposed serve some ordinarily legitimate state objective." Hamm v. Dekalb Co., 774 F.2d 1567, 1573 (11th Cir.1985), cert. denied, 475 U.S. 1096, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986). The plaintiff must prove that he was deprived a "basic need" and that this deprivation was attended by deliberate indifference on the part of the defendants. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir., cert. denied, 510 U.S.949 (1993)). Further, the plaintiff must produce evidence of serious or significant physical or emotional injury resulting from challenged conditions to withstand summary judgment on prison conditions claim. Id. at 1380-1381.

Plaintiff complains of overcrowding and exposure to cigarette smoke and the staph bacteria. Powers admits that the SCDF is overcrowded at times, but notes that the situation is usually temporary because it is a pretrial detainment facility. Powers also explains that inmates, like Plaintiff, who are housed in the general population are given the most freedom and extensive access (approximately 6 to 7 hours per day) to the day room. Powers further avers that he has contacted the appropriate county officials about the need for more housing space.

It is "well established that 'double or triple celling of inmates is not per se unconstitutional.'" Hause v. Harris, 2008 WL 216651 (D.S.C. January 23, 2008) citing Mathias v. Simpkins, 2007 WL 1577336 at *2 (W.D.Va. May 31, 2007). Plaintiff has failed to show the overcrowding resulted in or that Powers actually knew of and disregarded a substantial risk of serious injury to the detainee or that he actually knew of and ignored any serious need for medical care on behalf of the plaintiff. See Coclough v. Major, 2008 WL 1744556 (D.S.C. April 10, 2008) citing Parrish v. Cleveland, 372

F.3d 294, 302 (4th Cir.2004). Therefore, no viable 1983 claim has been presented. Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir.1985)(the fact that pretrial detainee temporarily had to sleep on a mattress on the floor or on a table "is not necessarily a constitutional violation").

While Plaintiff's claim concerning smoking presents a cause of action under 42 U.S.C. § 1983; see Helling v. McKinney, 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993); in order to proceed with this claim the Plaintiff must produce evidence to show that the Defendant has, with deliberate indifference, exposed him to levels of environmental tobacco smoke (ETS) that pose an unreasonable risk of serious damage to his future health. Helling, 509 U.S. at 35. This standard requires Plaintiff to present evidence sufficient to show that he was exposed to unreasonably high levels of ETS and that the risk Plaintiff complains of was so grave that it violates contemporary standards of decency (objective element), as well as that the Defendant was deliberately indifferent to the exposure of the Plaintiff to such a hazard (subjective element). Helling, 509 U.S. at 35-37; Mills v. Clark, No. 99-6334, 2000 WL 1250781 (4th Cir. Sept.5, 2000); Pryor-El v. Kelly, 892 F.Supp. 261, 266-267 (D.D.C.1995). Plaintiff has failed to submit evidence sufficient to give rise to a genuine issue of fact under this standard. In contrast, Powers has submitted an Affidavit in which he avers that smoking is prohibited at SCDF's main facility and that he instructs his officers to strictly enforce the prohibition. In addition, Powers submits an environmental report which shows that no nicotine was detected in the vicinity of Plaintiff's cell or common area. Plaintiff's mere lay opinion and allegation that he was exposed to unreasonably high levels of ETS is not sufficient to avoid summary judgment on this claim. Henderson v. Sheahan, 196 F.3d 839, 852 (7th Cir.1999) (Upholding summary judgment where plaintiff failed "to proffer competent and reliable expert medical testimony that there was a reasonable medical certainty that he himself faces some defined

level of increased risk of developing a serious medical condition and that his increased risk was proximately caused by his exposure to second-hand smoke while detained at the [ ] jail").

As for Plaintiff's complaint regarding the staph infection, it is not entirely clear what theory of liability Plaintiff is asserting. In his Complaint, he simply states that he noticed some bumps the nurse told him it was a staph infection. He does not complain about the treatment he received for the staph infection. In his Affidavit, he asserts that many detainees were infected with staph and the nurse told him it was bad at SCDF. Thus, it appears that he is complaining that Powers was deliberately indifferent to the risk of becoming infected with the staph bacteria.

The issue for the court when a plaintiff asserts deliberate indifference to a risk of harm is whether an inmate who has suffered injury has alleged and offered evidence that the prison officials "wantonly and obdurately failed to take precautions for his safety in deliberate indifference to a specific known risk of harm...." Ruefly v. Landon, 825 F.2d 792 (4th Cir.1987). The Supreme Court has defined "deliberate indifference" in the context of the liability of physical injury to an inmate. In analyzing case law, the court concluded that deliberate indifference must be something more than mere negligence, but less purposeful or knowing conduct. The court held: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

As averred by both Powers and Collins, there has been no outbreak of staph at the SCDF. The facility has been tested for the staph bacteria at least four times since November of 2007, and each time the results reveal that the tested areas are negative for the presence of staph. Furthermore, Powers avers that all cleaning supplies purchased and used in the SCDF are EPA approved to clean

and sanitize surfaces from bacteria, including staph. The record reveals that Powers took specific precautions to protect the detainees at SCDF from the risk of contracting the staph infection. Thus, Plaintiff's claim of deliberate indifference to a risk of harm fails.

Additionally, Plaintiff has not presented evidence to create a genuine issue of material fact as to whether Plaintiff was denied the minimal civilized measure of life's necessities, or that Powers engaged in any conduct "for the very purpose of causing harm or with the knowledge that harm would result. See Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Plaintiff has not shown that he was deprived a "basic need" and that these deprivations were attended by deliberate indifference on the part of the defendants. Strickler, 989 F.2d at 1379. Further, Plaintiff has failed to show any express intent on the part of Powers to punish him. Finally, Plaintiff has failed to show that any injuries he may have received as a result of the overcrowding, smoking, or bacterial infection were any more than de minimis. To survive summary judgment, the plaintiff must show more than de minimis pain or injury. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir., cert. denied, 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993)). The plaintiff must produce evidence of serious or significant physical or emotional injury resulting from challenged conditions to withstand summary judgment on prison conditions claim. Id. at 1380-1381.

For these reasons, Plaintiff's claims fail as a matter of law and summary judgment is appropriate.

**D.    Qualified Immunity**

Defendant also asserts that he is entitled to qualified immunity in his individual capacity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), established the standard which the court is to follow in determining whether the defendant is protected

by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); see also Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir.2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." Wilson, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." Porterfield v. Lott, 156 F.3d 563, 567 (4th Cir.1998). As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations. Nevertheless, assuming arguendo that Plaintiff has presented sufficient evidence of a constitutional violation, Defendants are entitled to qualified immunity from suit.

In Maciariello v. Sumner, 973 F.2d 295 (4th Cir.1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

Maciariello, 973 F.2d at 298. Defendant in the present case has not transgressed any "bright lines" of constitutional conduct and, as such, is entitled to qualified immunity.

## V. CONCLUSION

For the reasons set forth above, it is recommended that Defendant's Motion for Summary Judgment (Document # 24) be granted and this case be dismissed.[1]

        s/Thomas E. Rogers, III
        Thomas E. Rogers, III
        United States Magistrate Judge

August 6, 2009
Florence, South Carolina

**The parties are directed to the important notice on the following page.**

---

[1] Also pending are Plaintiff's two Motions for Appointment of Counsel (Documents # 23, 29). Plaintiff asserts that he is unable to read or write and has to depend on other inmates to do his legal work. Plaintiff has identified no exceptional circumstances that would warrant appointment of counsel, see Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975), as he has failed to show how his reliance on others has hindered his ability to prosecute this case. Indeed, Plaintiff has filed at least four other cases in this court without counsel. See 4:07-3972-HFF-TER; 4:07-4012-HFF; 4:08-2245-HFF-TER; and 7:09-1918-HFF-TER. Furthermore, the undersigned has previously ruled on this issue. See Order (Document # 21). These Motions for Appointment of Counsel (Documents # 23, 29) are **DENIED**.